United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INTEL CORPORATION,

Plaintiff,

v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al.,

Defendants.

Case No. 22-cv-07596-PCP

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In this action, plaintiff Intel Corporation ("Intel") challenges defendant U.S. Citizenship and Immigration Services' ("USCIS") rejection of five untimely petitions for visas that Intel submitted on behalf of qualified temporary foreign workers. Intel also sues defendants Ur Mendoza Jaddou, in her official capacity as Director of USCIS, and Donna P. Campagnolo, in her official capacity as the Director of USCIS's California Service Center. Intel contends that its untimely submissions were caused by the defendants' failure to provide constitutionally sufficient notice that Intel was permitted to submit petitions on behalf of the selected workers. Intel also argues that defendants violated the Immigration and Nationality Act ("INA") and its implementing regulations by providing insufficient notice and summarily rejecting its late petitions. The defendants (hereinafter collectively "USCIS") contend that USCIS provided constitutionally sufficient notice and complied with federal law in denying those petitions. Intel's failure to timely submit petitions, defendants argue, was instead the result of Intel's own negligence and oversight.

Before the Court are the parties' cross-motions for summary judgment. For the following reasons, the Court grants the defendants' motion and denies Intel's.

United States District Court
Northern District of California

## BACKGROUND

### I. Statutory and Regulatory Background

Under the INA, United States employers may petition for "H–1B visas" on behalf of qualified temporary foreign workers coming to the United States to perform services in a "specialty occupation." *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b); *id.* §1184(c)(1) (the "H–1B program"). Congress caps the number of individuals who may be granted H–1B visas or grants of status in a given fiscal year. *See* 8 U.S.C. § 1184(g). The cap for H–1B visas for FY2022 was 65,000 ("regular cap"), with an additional 20,000 for individuals with a master's or higher degree from a United States institution ("master's cap"). *See id.* Department of Homeland Security ("DHS") regulations dictate the H–1B cap selection process, referred to as a "lottery." *See generally* 8 C.F.R. § 214.2(h)(8)(iii).

Before employer-petitioners can file an H–1B cap-subject petition, they must first "register to file a petition on behalf of a beneficiary electronically through the USCIS website (www.uscis.gov)." 8 C.F.R. § 214.2(h)(8)(iii)(A)(1). "A petitioner must electronically submit a separate registration for each beneficiary it seeks to register, and each beneficiary must be named. A petitioner may only submit one registration per beneficiary in any fiscal year." 8 C.F.R. § 214.2(h)(8)(iii)(A)(2). "[O]nly after their properly submitted registration for that beneficiary has been selected for that fiscal year" may petitioners proceed to "file an H–1B cap-subject petition on behalf of a registered beneficiary." 8 C.F.R. § 214.2(h)(8)(iii)(A)(4). "USCIS will separately notify each registrant that their registration on behalf of a beneficiary has been selected, and that the petitioner(s) may file a petition(s) for that beneficiary." *Id.*

Each fiscal year, USCIS announces on its website the start and end dates of the initial registration period during which petitioners may submit registrations. 8 C.F.R. § 214.2(h)(8)(iii)(A)(3). After the close of the initial registration period, USCIS "consider[s] all properly submitted registrations relating to beneficiaries that may be counted" and determines whether it has received enough registrations to meet the H–1B regular cap. 8 C.F.R. § 214.2(h)(8)(iii)(A)(5), (6). If it has received enough registrations, USCIS closes the registration period and randomly selects from among the registrations the number of registrations it deems

necessary to meet the cap. *Id.* If USCIS determines that it has received fewer registrations than needed, USCIS "will notify all petitioners that have properly registered that their registrations have been selected" and "will keep the registration period open beyond the initial registration period, until it determines that it has received a sufficient number of registrations." *Id.* USCIS "will notify the public of the date that USCIS has received the necessary number of registrations (the 'final registration date')." *Id.* "Unselected registrations will remain on reserve for the applicable fiscal year." 8 C.F.R. § 214.2(h)(8)(iii)(A)(7). If USCIS later determines that it needs to increase the number of registrations projected to meet the cap and select additional registrations, it will select from among the registrations that are on reserve. *Id.*

The regulations specify that petitioners "will receive electronic notification that USCIS has accepted a registration for processing." 8 C.F.R. § 214.2(h)(8)(iii)(B). "USCIS will notify all petitioners with selected registrations that the petitioner is eligible to file an H–1B cap-subject petition on behalf of the beneficiary named in the notice within the filing period indicated on the notice." 8 C.F.R. § 214.2(h)(8)(iii)(C). The petition "must be properly filed within the filing period indicated on the relevant selection notice." 8 C.F.R. § 214.2(h)(8)(iii)(D)(3). "If petitioners do not meet the requirements of this paragraph (h)(8)(iii)(D), USCIS may deny or reject the H–1B cap-subject petitions." *Id.*

## II. Undisputed Facts

Intel is a multinational corporation and technology company incorporated in Delaware and headquartered in Santa Clara, CA. USCIS is a federal agency under DHS responsible for administering H–1B visas pursuant to the INA and for overseeing USCIS service centers nationwide. Defendant Ur Mendoza Jaddou is the Director of USCIS. Defendant Donna P. Campagnolo is the Director of USCIS's California Service Center.

Intel submitted registrations for the FY2022 H–1B visa lottery for over 1,000 employees through two online representative accounts registered to attorneys Juan Flamand and Hannah Jahn. Dkt. No. 33, at 13; Dkt. No. 34, at 14. In April 2021, USCIS made its first-round selections, which included 348 registrations from Intel's submissions. Intel thereafter filed H–1B cap-subject petitions on behalf of the selected beneficiaries. Dkt. No. 33, at 13; Dkt. No. 34, at 14. After the

close of that initial filing period, USCIS announced in July 2021 that there would be a second round of lottery selections. USCIS selected an additional 119 from among the registrations Intel had submitted, and Intel proceeded to file timely petitions on behalf of those beneficiaries. Dkt. No. 33, at 13; Dkt. No. 34, at 14.

On Friday, November 19, 2021, USCIS announced that it had conducted a third round of lottery selections. Dkt. No. 33, at 13; Dkt. No. 34, at 15. That day, USCIS posted a public alert on its website stating:

> On Nov. 19, we selected from among previously submitted electronic registrations using a random selection process. The petition filing period based on registrations selected on Nov. 19 will begin on Nov. 22, 2021, and close on Feb. 23, 2022. Individuals with selected registrations will have their MyUSCIS accounts updated to include a selection notice, which includes details about when and where to file.

Dkt. No. 33, at 14–15; Dkt. No. 34-5, at 1.

After reading the notice that day, Mr. Flamand accessed his MyUSCIS account around 3:30 pm EST and again a few hours later. He downloaded CSV files containing certain selected registrations. Later that evening, after Mr. Flamand had already downloaded the files, USCIS finished processing and uploading the selected registrations, including the ones at issue in this litigation. Because these registrations were processed and uploaded after Mr. Flamand had initially accessed his MyUSCIS account, they were not included in the CSV files he downloaded.

Later that weekend, USCIS sent Mr. Flamand both an email and text message indicating that changes had been made to his MyUSCIS account. Dkt. No. 33, at 15; Dkt. No. 34, at 15–16. Those alerts did not prompt him to log back into his account because he thought the email and text messages referenced the records he had already downloaded. Dkt. No. 34, at 15–16.

Around August 2022, approximately six months after the FY2022 H–1B visa filing window had closed, Intel attempted to file petitions on behalf of the individuals associated with the registrations that had been processed and uploaded after Mr. Flamand accessed his account on November 19, 2021. Intel requested that USCIS accept the petitions *nun pro tunc*. USCIS rejected the petitions without substantive review. Dkt. No. 33, at 15; Dkt. No. 34, at 17.

On December 2, 2022, Intel commenced this action. In its original complaint, Intel asserted

claims under the INA, sought relief under the Administrative Procedure Act ("APA"), the Mandamus Act, and the Declaratory Judgment Act, and requested an order declaring USCIS's notifications around its selection of registrations at issue unlawful, declaring USCIS's rejections of Intel's petitions unlawful, and compelling USCIS to process the filings. Dkt. No. 1, at 11–13. On February 10, 2023, USCIS filed a motion to dismiss under both Rule 12(b)(1), for lack of Article III standing to bring its claims, and Rule 12(b)(6), for failure to state a claim. The Court denied USCIS's Rule 12(b)(1) motion and found that Intel had plausibly established standing but granted USCIS's Rule 12(b)(6) motion to dismiss with leave to amend, finding that Intel had failed to plausibly allege that USCIS did not comply with its regulations. Dkt. No. 25.

On August 16, 2023, Intel filed an amended complaint reasserting its original claims and adding a claim under the Due Process Clause of the Fifth Amendment. Dkt. No. 28, at 19–20. USCIS answered the amended complaint on August 30, 2023, and filed a motion for summary judgment on September 20, 2023. Dkt. Nos. 31, 33. Intel filed a joint response and cross-motion for summary judgment on October 11, 2023, Dkt. No. 34.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where cases involve disputes of law rather than fact, courts simply decide the legal issues. *See N. Cal. River Watch v. Wilcox*, 633 F.3d 766, 772 (9th Cir. 2011); *Alcaraz v. Block*, 746 F.2d 593, 602–03 (9th Cir. 1984). To establish a factual dispute, the nonmoving party must cite to relevant evidence or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the burden of demonstrating that there is no genuine factual dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "It is well-settled in this circuit and others that the filing of cross-motions for summary judgment … does not vitiate

the court's responsibility to determine whether disputed issues of material fact are present. A summary judgment cannot be granted if a genuine issue as to any material fact exists." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)).

**ANALYSIS**

## I. Intel Has Established Article III Standing.

In order to establish Article III standing—a prerequisite to this Court's exercise of subject matter jurisdiction over this lawsuit—"[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "At the summary judgment stage, a plaintiff must offer evidence and specific facts demonstrating each element of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) (cleaned up).

In moving for summary judgment, USCIS challenges only the second element, traceability.[1] "To establish traceability, 'there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560). "[T]he traceability requirement is less demanding than proximate causation, and thus the 'causation chain does not fail solely because there are several links' or because a single third party's actions intervened." *O'Handley v. Weber*, 62 F.4th 1145, 1161 (9th Cir. 2023) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)).

---

[1] In reply, USCIS for the first time challenges Intel's ability to establish redressability. That argument has arguably been waived. *See U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894–95 (1990)) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."). Regardless, USCIS's challenge lacks merit. The Court rejected USCIS's similar arguments in its order granting in part the motion to dismiss, *see* Dkt. No. 25, at 9–10, and the Court again finds that Intel has proffered sufficient evidence that its injuries are likely to be redressed by a favorable decision of this Court. *See Mecinas v. Hobbs*, 30 F.4th 890, 900 (9th Cir. 2022).

Intel alleges that the injury complained of—its failure to secure H–1B visas for certain individuals—was caused by USCIS's failure to provide adequate notice that Intel was permitted to submit petitions for those individuals. In response, USCIS renews arguments raised and rejected by this Court in its order on the motion to dismiss, including that Intel is the cause of its own injury because Mr. Flamand admits that he did not check his account for updates despite prompting by USCIS.

USCIS's arguments again fail. The fact that Intel (through its counsel) may have been *a* cause that contributed to its injury does not negate the causal link between USCIS's conduct and the underlying injury for purposes of establishing traceability. *See O'Handley*, 62 F.4th at 1161. Intel's uncontested evidence goes beyond speculation and establishes that Intel's failure to receive notice due to USCIS's allegedly inadequate notification process was a causal factor contributing to the complained-of injury, whether or not there existed other intervening causes. Requiring Intel to do more for purposes of standing would confuse the jurisdictional inquiry—"Is Intel's injury traceable in some way to USCIS's conduct?"—with the merits inquiry—"[W]as USCIS's notification procedure actually inadequate?". While "the causal connection put forward for standing purposes cannot be too speculative or rely on conjecture about the behavior of other parties," it "need not be so airtight at this stage of the litigation as to demonstrate that the plaintiffs would succeed on the merits." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000).

Intel has provided evidence sufficient to establish an injury that is fairly traceable to the challenged conduct by USCIS. The Court therefore once again declines to rule in USCIS's favor on jurisdictional grounds.

## II. USCIS Is Entitled to Summary Judgment on Intel's Due Process Claim.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts "analyze a procedural due process claim in two steps. The first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the

procedures attendant upon that deprivation were constitutionally sufficient." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (quoting *United States v. Juvenile Male*, 670 F.3d 999, 1013 (9th Cir. 2012), *cert denied*, 133 S.Ct. 234 (2012)).

USCIS argues that Intel cannot establish that USCIS violated its due process rights for two reasons. First, USCIS argues as a threshold matter that Intel cannot establish a liberty or property interest in receiving the selected H–1B cap visas and as such fails to satisfy the first prong of the due process inquiry. Second, USCIS argues that Intel cannot establish that the notice it received with respect to the H–1B registrations at issue was constitutionally deficient. Conversely, Intel argues that it is entitled to summary judgment because Intel has demonstrated that it has a property interest in receiving the H–1B visas and the notice provided by USCIS was deficient.

### A. Intel Had a Property Interest in Receiving the Visas Associated with the Selected H–1B Registrations to Which the Procedural Protections of the Due Process Clause Applied.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Greenwood v. F.A.A.*, 28 F.3d 971, 976 (9th Cir. 1994) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source.'" *Id.* (quoting *Board of Regents*, 408 U.S. at 577). "A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'" *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994). "Although procedural requirements ordinarily do not transform a unilateral expectation into a protected property interest, such an interest is created if the procedural requirements are intended to be a significant substantive restriction on ... decision making." *Id.* (cleaned up).

The dimensions of the property interest in this case are defined by the INA and its implementing regulations. In relevant part, the INA regulations mandate that USCIS "notify all petitioners with selected registrations that the petitioner is eligible to file an H–1B cap-subject petition on behalf of the beneficiary named in the notice within the filing period indicated on the

United States District Court
Northern District of California

notice." 8 C.F.R. § 214.2(h)(8)(iii)(C). Unless a statute or regulation allows for discretion, "USCIS will approve the benefit request" where "the evidence submitted with the benefit request establishes eligibility." 8 C.F.R. § 103.2(b)(8)(i).

Under these circumstances, Intel at minimum had a "reasonable expectation of entitlement" to receiving H–1B visas for the registrations at issue once USCIS selected them in the lottery. At that point, federal law required USCIS to approve the related visa petitions so long as they established eligibility. Intel's expectation was therefore "more than an abstract need or desire" for the H–1B visas. *Greenwood*, 28 F.3d at 976. Instead, from that point forward USCIS faced "significant substantive restriction[s] on [its] decision making," *Wedges*, 24 F.3d at 62, that gave Intel a reasonable expectation of receiving the visas at issue. Intel thus satisfies the first step of the procedural due process analysis.

**B. Intel Received Constitutionally Sufficient Notice.**

As noted already, where a protected property interest is involved the Due Process Clause requires certain procedural minimums. *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1192 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016). In determining whether the procedures provided by the government are constitutionally sufficient, courts generally apply the three-part inquiry set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). "First, courts must look at the nature of the interest that will be affected by the official action, and in particular, to the 'degree of potential deprivation that may be created.' Second, courts must consider the 'fairness and reliability' of the existing procedures and the 'probable value, if any, of additional procedural safeguards.' Finally, courts must assess the public interest, which 'includes the administrative burden and other societal costs that would be associated with' additional or substitute procedures." *Nozzi*, 806 F.3d at 1192–93 (quoting *Mathews*, 424 U.S. at 341, 343, 347).

**1. Private Interests at Stake**

The private interest at stake in this case and the degree of potential deprivation are meaningful. Employers who do not receive notice of the lottery selections lose the ability to employ foreign individuals with advanced degrees, and those individuals similarly lose the opportunity to secure employment with that particular employer in the United States.

At the same time, however, this deprivation does not prevent employers like Intel from hiring other employees nor does it prevent potential foreign employees from seeking other visas or other forms of employment. The duration of any potentially wrongful deprivation is also temporary and time-limited, restricting an employer-petitioner's ability to submit a registration for the beneficiaries at issue for only a single fiscal year. *See* 8 C.F.R. § 214.2(h)(8)(iii)(A)(2); *Mackey v. Montrym*, 443 U.S. 1, 12 (1979) ("The duration of any potentially wrongful deprivation of a property interest is an important factor in assessing the impact of official action on the private interest involved."). The private interest here is therefore less than "substantial." *Cf. Zerezghi v. U.S. Citizenship & Immigr. Servs.*, 955 F.3d 802, 810 (9th Cir. 2020) (holding that a citizen petitioner's nondiscretionary, statutory interest in the grant of an I-130 petition favored the petitioner where a finding of marriage fraud subjected him and his spouse to "immense hardship" caused in part by the noncitizen spouse's risk of removal); *Nozzi*, 806 F.3d at 1193 (9th Cir. 2015) (holding that the private interest in Section 8 housing benefits without which plaintiffs could lack decent housing was "substantial").

In short, the property interests here are meaningful and more than minimal—perhaps even considerable, *see, e.g.*, *Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 754 (9th Cir. 2001) (holding that the plaintiff's private interest in previously-approved plots of land and corresponding entitlement to permits was "considerable")—but not as strong as the substantial property or liberty interests at issue in many of the cases cited by plaintiffs. The interests merit procedural protection, but not strong enough to require that USCIS take steps to address every possible mistake, miscommunication, or user error that could result in a deprivation of those interests.

**2. Risk of Erroneous Deprivation**

To pass constitutional muster, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties … with due regard for the practicalities and particularities of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). When "notice is a person's due," the procedures "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself

reasonably certain to inform those affected." *Id.* at 315.

Notice here was "reasonably calculated, under all the circumstances, to appraise" employer-petitioners of the selections and limit the risk that employer-petitioners would be deprived of their ability to file H–1B visa petitions after failing to receive notice of their entitlement to do so. To notify Intel of the selected registrations, UCSIS provided actual notice to its attorney representative through his online MyUSCIS account and sent that same representative both a text message and an email informing him that his account had been changed after all of the selected registrations had been processed and uploaded. Under these circumstances, the risk was minimal that the employer's legal representative would not only disregard USCIS's text and email messages based on the erroneous belief that those messages referred to changes the representative had already reviewed but also fail to log back onto the MyUSCIS system at any point during the subsequent three-month window period for submitting applications. This was particularly true given that the parties receiving such notices were relatively sophisticated. Only employers seeking foreign employees with specialized knowledge or advanced degrees are eligible to petition for H–1B visas and, by Intel's own account, "most major employers, including Intel, choose to file H–1B registrations through outside counsel using that counsel's online MyUSCIS account." Flamand Decl., Dkt. No. 34-1, at ¶ 29.

Intel's arguments to the contrary lack merit. Intel argues that the content of the public announcement, text messages, and email alerts were "defective as a matter of law" because they each failed to provide employer-petitioners with sufficient information and were deficient vis-à-vis prior and subsequent notices USCIS provided in other lotteries. *See* Dkt. No. 34, at 23–24. That the language could have been more specific or that procedures varied from prior and subsequent procedures does not, however, mean that notice here created too great a risk of erroneous deprivation. Given the sophistication of the parties, the government's use of preselected preferred methods of notification, and its multiple attempts to inform employer-petitioners of the selection, the Court has little difficulty concluding that notice was reasonably calculated to appraise Intel of its selected applications and minimize the risk of erroneous deprivation.

**3. Burden of Providing the Requested Procedure**

Intel argues that USCIS's public announcement "could and should have issued a notice that was not vague but instead notified employers of relevant information, as it did before or after," and that USCIS should have "alert[ed] users to the apparent upload of data across time" in a subsequent email or text message. Dkt. No. 34, at 24. That procedure, Intel argues, "would presumably have been costless." *Id.* Intel notes that USCIS uses "a much more robust way of notifying practitioners" through "written notices … in virtually every other circumstance including other parts of the H–1B process." *Id.*

While the Court agrees that simply changing the language in the notifications would have imposed no significant burden on USCIS, relying on written notices would unquestionably have imposed a meaningful additional burden on USCIS. The burdens of implementing the procedures requested by Intel would therefore be minor but not insignificant. Given that the procedure actually employed by USCIS was reasonably calculated to appraise Intel of the selected registrations, this additional burden further weighs against finding any violation of Intel's due process rights.

* * *

On balance, Intel has not provided evidence that would allow a reasonable jury to find that USCIS violated its due process rights. In a matter involving property interests that are meaningful but not particularly substantial, USCIS not only provided Intel with actual notice through its selected representative's preferred method of communication (MyUSCIS) but also specifically notified Intel of changes to its representative's account after those changes were made. Although those notices could have been clearer, that alone is not sufficient to establish any violation of Intel's due process rights. Under the specific circumstances here, procedural due process did not require USCIS to implement procedures that would eliminate every possibility of attorney error. USCIS is therefore entitled to summary judgment on Intel's due process claim.

**III. USCIS Is Entitled to Summary Judgment on Intel's INA Claim.**

The second question presented by the parties' cross-motions is whether USCIS's notice of the third-round selections and subsequent rejection of the untimely petitions filed in August 2022

United States District Court
Northern District of California

violated the INA and its implementing regulations and thus entitles Intel to relief under the Administrative Procedures Act, the Mandamus Act, and the Declaratory Judgment Act.

Courts generally may not set aside agency action under the APA unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Agency action should be overturned only when the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002) (cleaned up).

The INA's implementing regulations state that "USCIS will notify all petitioners that have properly registered that their registrations have been selected." 8 C.F.R. § 214.2(h)(8)(iii)(A)(5)(i) (regular cap); *id.* § 214.2(h)(8)(iii)(A)(6)(i) (advanced degree cap). Additionally, they mandate that "USCIS will notify all petitioners with selected registrations that the petitioner is eligible to file an H–1B cap-subject petition on behalf of the beneficiary named in the notice within the filing period indicated on the notice." 8 C.F.R. § 214.2(h)(8)(iii)(C).

The undisputed facts establish that USCIS complied with both of these requirements of the implementing regulations. USCIS issued statements notifying petitioners that registrations had been selected through both the November 19th public announcement and the text and email notices on November 20th, and notified Intel that it was eligible to file petitions on behalf of specifically named beneficiaries through beneficiary-specific selection notices uploaded to its representative's myUSCIS account on November 19th. Intel challenges the sufficiency of these notices because the text and email notice was "a blanket notice" that "did not specify the individual for whom the selected registration applied." Dkt. No. 34, at 25. But the facts show that Intel received actual notice of the selections, including the beneficiaries named, and simply failed to review that notice. The INA and its implementing regulations required no more.

USCIS also complied with the INA and its implementing regulations when it rejected the five submissions at issue. The regulations require that an H–1B cap-subject petition "must be properly filed within the filing period indicated on the relevant selection notice" and state that

USCIS “may deny or reject the H–1B cap-subject petition where petitioners do not meet the requirements of this paragraph (h)(8)(iii)(D).” 8 C.F.R. § 214.2(h)(8)(iii)(D)(3). Here, it is undisputed that Intel did not submit petitions within the filing period indicated on the selection notices, instead filing them over six months after that deadline expired. Pursuant to 8 C.F.R. § 214.2(h)(8)(iii)(D)(3), USCIS rejected the petitions as untimely.

Intel argues that USCIS had authority pursuant to 8 C.F.R. § 103.5(a)(5) to reopen or reconsider a matter on its own motion and could have accepted the untimely petitions should it have chosen to. Even were that the case, however, the Court cannot conclude that USCIS violated the INA and its implementing regulations by denying the petitions as untimely, where that decision was entirely consistent with 8 C.F.R. § 214.2(h)(8)(iii)(D)(3). That USCIS may have had the option to reopen Intel’s petitions on a discretionary basis does not establish that it was required to do so.

Intel also generally argues that it is entitled to judicial review of USCIS’s rejection of its petitions under 5 U.S.C § 702 because the actions are “lacking in substantial evidence, are without rational basis, and arbitrary and capricious.” Dkt. No. 34, at 26. The Court disagrees. Based on the undisputed evidence, USCIS properly applied and complied with the INA and its implementing regulations both when it notified Intel of the selected registrations and when it summarily denied the late petitions as untimely.

## CONCLUSION

For the foregoing reasons, the Court grants USCIS’s motion for summary judgment and denies Intel’s cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: July 10, 2024

P. Casey Pitts
United States District Judge